UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARGARET KIRCHMAN, et al.,

   Plaintiffs,

      v.                                    Case No.: 8:06-cv-1787-T-24-TBM

NOVARTIS PHARMACEUTICALS
CORPORATION,

   Defendant.
_____/

**ORDER**

This cause comes before the Court on the Defendant Novartis Pharmaceuticals Corporation's *Daubert* Motion to Exclude Certain Testimony of Plaintiff's Expert Dr. Robert Marx (Dkt. 30), *Daubert* Motion to Exclude Certain Testimony of Plaintiff's Expert Dr. James Vogel (Dkt. 31), and *Daubert* Motion to Exclude Plaintiff's Expert Dr. Suzanne Parisian. (Dkt. 33.) Plaintiff Margaret Kirchman has filed responses in opposition. (Dkts. 37, 37, 35.) The Court conducted a hearing on the motions on May 15, 2014.

**I.    BACKGROUND**

After Donald Kirchman was diagnosed with multiple myeloma, his oncologist, Dr. Sung Tae Byun, prescribed Aredia and Zometa, which are bisphosphonate drugs manufactured by Novartis. Mr. Kirchman received Aredia in January 2002, and was switched to Zometa in April 2002. In late 2003, Dr. Byun discontinued Zometa due to Mr. Kirchman's renal insufficiency.

In April 2004, Mr. Kirchman visited a general dentist, Dr. Sabina Kunis, because of pain and swelling in his mouth. Dr. Kunis saw an infection in Mr. Kirchman's mouth, and believed there were hopeless teeth that needed to be extracted. Dr. Kunis referred Mr. Kirchman to an oral

surgeon, Dr. Anthony Auletta, who performed several extractions and observed exposed bone. By around April 2006, Dr. Auletta reported seeing no exposed bone.

In September 2006, the Kirchmans brought this products liability action against Novartis, alleging that Mr. Kirchman's use of Aredia and Zometa caused him to develop osteonecrosis of the jaw ("ONJ"). In November 2006, this action was transferred to a Multidistrict Litigation Court in the Middle District of Tennessee ("MDL court") for consolidated pretrial proceedings with other similar actions brought against Novartis.

In July 2007, Dr. Auletta examined a mass in Mr. Kirchman's lower left jaw, and found no exposed bone. After the mass was biopsied, Dr. Byun diagnosed Mr. Kirchman with multiple myeloma of the jaw. Dr. Byun recommended resuming Aredia or Zometa, and on March 24, 2008, Mr. Kirchman received one dose of Aredia. Three weeks later, on April 18, 2008, Mr. Kirchman died from multiple myeloma.

In 2013, this action was remanded back to this Court. Novartis has filed motions to exclude the expert testimony of Dr. Robert Marx, Dr. James Vogel, and Dr. Suzanne Parisian, contending such testimony is inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993).

**II.    LEGAL STANDARD**

This Court performs "a gatekeeping role" regarding admissibility of expert testimony. *Daubert,* 509 U.S. at 597. Under Rule of Evidence 702:

> If scientific . . . knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

2

The proponent of the expert testimony has the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of the following prongs:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Hendrix ex rel G.P. v. Evenflo Co.,* 609 F. 3d 1183, 1994 (11th Cir. 2010).

## III.   DISCUSSION

### A.   Dr. Robert Marx

Plaintiff has retained Dr. Robert Marx, a board-certified oral and maxillofacial surgeon at the University of Miami as an expert. He was one of the first doctors to allege a connection between bisphosphonates, such as Aredia and Zometa, and osteonecrosis of the jaw, and is widely cited on these topics in medical literature. Novartis seeks to exclude testimony from Dr. Marx that "speculat[es] about Novartis's intent, motives, or alleged 'bad faith' conduct," and his opinion that Zometa has a half-life of 11 years. (Dkt. 30 at 4-5.)

#### 1.   *Corporate intent, motive, or "bad faith" conduct*

Novartis seeks to exclude Dr. Marx from speculating about Novartis's intent, motives, or alleged "bad faith" conduct. Novartis contends Dr. Marx's opinions in this area are inadmissible under Rule 702 because expert witnesses cannot opine about a party's intent, motives, or state of mind, and because "they lie outside of Dr. Marx's expertise, are not based on a reliable scientific methodology, and are not of assistance to the jury." (Dkt. 30 at 5.)

In response, Plaintiff states that Dr. Marx will not offer testimony as to Novartis' state of mind, and will not offer an opinion on Novartis' intent, motive, or bad faith. (Dkt. 37 at 3.) Rather,

3

Plaintiff only intends to elicit testimony regarding Dr. Marx's "personal dealings with" Novartis and his "personal knowledge" of conduct of which he has first-hand knowledge. (*Id.*)

Novartis' *Daubert* motion is **GRANTED** to the extent that Dr. Marx may not opine on Novartis' intent, motive, or alleged bad faith. However, Dr. Marx is not precluded from testifying about Novartis' conduct, of which he has personal knowledge.

### 2. *Zometa's half-life*

Novartis also seeks to exclude Dr. Marx's opinions as to Zometa's half-life, which is the amount of time that the drug remains in the bone after it has been administered. Novartis contends Dr. Marx's opinions are inadmissible under Rule 702 because Dr. Marx lacks the necessary expertise required to address this complex issue because he is an oral surgeon, and not a "bone biologist, endocrinologist, pharmacologist, or an expert in how bisphosphonate drugs affect bone." (Dkt. 30 at 5.)

Further, Novartis argues that Dr. Marx's opinions on Zometa's half-life should be excluded because the source for his opinions do not address Zometa and do not contain conclusions that support his opinion. Specifically, Novartis contends Dr. Marx's opinions on Zometa's half-life are based entirely on a single article—Lasseter, K.C., *et. al.*, *Pharmacokinetic Considerations in Determining the Terminal Elimination Half-Lives of Bisphosphonates*, Clin. Drug Invest 2005—which not only addresses a different bisphosphonate (alendronate), but also "notes that alendronate has three separate half-lives, and that much of the alendronate is secreted within hours or days of use, while providing no indication or data that other bisphosphonates have similar half-life characteristics." (Dkt. 30 at 6; Dkt. 30-8.)

In response, Plaintiff asserts that Dr. Marx should be allowed to offer his opinions regarding the "half-life of the drugs as related to the causation of ONJ" because the MDL court already ruled that he may testify to the causal connection between ONJ and the drugs. (Dkt. 37 at

4

5.)  Further, Plaintiff contends Dr. Marx's citation to the *Lasseter* article does not render his opinions mere speculation, and that "[a]ll the scientific literature supports Dr. Marx."  (*Id.*)

As Plaintiff notes, the MDL court has ruled that Dr. Marx may testify as to "the causal connection between Aredia and Zometa and ONJ."  *In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-MD-1760 (M.D. Tenn. Aug. 13, 2009), attached as Exhibit 2 to Dkt. 30.  This means Dr. Marx is qualified to discuss Zometa's biological mechanism—as it relates to that causal connection.  *See Dopson-Troutt v. Novartis Pharms. Corp.*, 2013 WL 1339739, at *2 (M.D. Fla. Apr. 4, 2013) (denying *Daubert* motion to exclude Dr. Marx's "opinions as to the biological mechanism that allegedly causes ONJ").  The MDL court's ruling likewise means Dr. Marx is qualified to opine on Zometa's half-life as it relates to the alleged causal connection between Zometa and ONJ.  Novartis has demonstrated no basis for reconsidering the MDL court's ruling.  Moreover, Novartis' arguments regarding Dr. Marx's reliance on the *Lasseter* article are more appropriate for cross-examination at trial.

Accordingly, Novartis' *Daubert* motion to exclude Dr. Marx's testimony regarding Zometa's half-life as it relates to causation is **DENIED**.

### B. Dr. James Vogel

Plaintiff has designated Dr. James Vogel as an expert in hematology and oncology, who has prescribed both Aredia and Zometa. Dr. Vogel has testified in previous Novartis trials.  If called at trial in this case, Dr. Vogel would offer his opinions concerning the general causation connection between Aredia and Zometa and ONJ, and the adequacy of the warnings given by Novartis—testimony that the MDL court has ruled to be admissible under *Daubert*.  *In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-MD-1760 (M.D. Tenn. Aug. 13, 2009).

Novartis contends Dr. Vogel's testimony is inadmissible under Rule 702 because of deficiencies in Dr. Vogel's qualifications and methodology, or because his opinions do not "fit"

5

the facts of this case. Incorporating its *Daubert* motion filed in *Dopson-Troutt v. Novartis Pharm. Corp.*, No. 8:06-cv-1708, Dkt. 71 (M.D. Fla. Dec. 3, 2012), Novartis seeks to exclude Dr. Vogel's opinions regarding: (1) Novartis' corporate conduct; (2) the necessity and efficacy of pretreatment dental screenings; (3) the incidence of ONJ; (4) dosing and duration of treatment; and (5) the comparable safety and efficacy of Aredia and Zometa. (Dkt. 31 at 3.) However, recognizing that this Court in *Dopson-Troutt* found that Novartis' arguments were better addressed at trial, Novartis states it is prepared to make its objections at trial should Dr. Vogel appear for Plaintiff.

In response, Plaintiff also incorporates the response in opposition to Novartis' *Daubert* motion that was filed in *Dopson-Troutt*. *See Dopson-Troutt*, No. 8:06-cv-1708, Dkt. 81 (M.D. Fla. Dec. 17, 2012). Further, Plaintiff contends the Court should defer ruling until trial.

Given that Novartis' *Daubert* motion to exclude Dr. Vogel and Plaintiff's response in this case are substantively the same as those filed in *Dopson-Troutt*, the Court also incorporates its *Dopson-Troutt* order, which denied Novartis' motion. *See Dopson-Troutt*, No. 8:06-cv-1708, Dkt. 104 (M.D. Fla. Apr. 14, 2013). Specifically, the MDL court has already ruled on the arguments contained in Novartis' *Daubert* motion to exclude Dr. Vogel. The MDL Court denied Novartis' *Daubert* motion to exclude Dr. Vogel, finding that his proposed testimony is "more than unsupported speculation," and that Novartis' arguments were more appropriate for cross-examination. To the extent that Novartis offers arguments challenging Dr. Vogel's testimony as to certain issues that have not been previously ruled upon by the MDL Court, the Court shall address those arguments at trial, if necessary.

Accordingly, Novartis' *Daubert* motion to exclude Dr. Vogel is **DENIED IN PART AND DEFERRED IN PART**.

6

### C.     Dr. Suzanne Parisian

In its motion filed in this case, Novartis asks the Court to follow its *Dopson-Troutt* order, which granted in part, denied in part, and deferred in part Novartis' *Daubert* motion to exclude Dr. Parisian. Specifically, Novartis's motion to exclude filed in this case asks the Court to: (1) limit Dr. Parisian's testimony regarding "regulatory causation" opinions; (2) exclude various categories of Dr. Parisian's testimony—such as legal conclusions and medical causation—which the plaintiff in *Dopson-Troutt* (and Plaintiff in this case) stipulated that she would not offer; and (3) otherwise defer ruling on discreet objections to Dr. Parisian's testimony until trial. (Dkt. 33 at 5-6.)

Except for the Court's *Dopson-Troutt* ruling on the "regulatory causation" issue, Plaintiff agrees with Novartis' request to follow the Court's *Dopson-Troutt* rulings in this case. (Dkt 35.)

#### 1.     *Dopson-Troutt order*

Because the parties ask the Court to follow its *Dopson-Troutt* ruling for the purpose of Novartis' motion to exclude Dr. Parisian's testimony in this case, the Court first summarizes the rulings set forth in its *Dopson-Troutt* order. In *Dopson-Troutt*, Novartis argued that Dr. Parisian should be precluded from offering testimony in the following areas:

- (a) corporate conduct;
- (b) legal conclusions;
- (c) regulatory compliance;
- (d) whether Novartis violated FDA rules or regulations with respect to its development, marketing, labeling, and monitoring of Zometa;
- (e) ONJ causation or diagnosis and so-called "regulatory causation";
- (f) labeling;
- (g) the state of mind of Novartis or the FDA;
- (h) Novartis's alleged failure to act reasonably or follow industry standards;
- (i) Novartis's alleged failure to adequately monitor the safety of clinical trial patients;
- (j) ghostwriting and company funding of publications; and
- (k) other "irrelevant, unfairly prejudicial, and confusing testimony."

7

*Dopson-Troutt v. Novartis Pharms. Corp.*, 2013 WL 1344755, at *1 (M.D. Fla. Apr. 2, 2013).

The Court found that Dr. Parisian was generally qualified to offer opinions regarding the four broad subject areas described in her expert report: (1) the role, process and functions of the FDA and the responsibilities of pharmaceutical drug sponsors; (2) Novartis' conduct regarding New Drug Application approvals and post-approval of Aredia and Zometa; (3) Novartis' pharmacovigilance efforts, investigation of ONJ and interactions with the FDA; and (4) Novartis; communication of ONJ risks to health care providers. *Id*. at *2.

The Court granted Novartis' *Daubert* motion to preclude Dr. Parisian from testifying as to legal conclusions (category "b"); deferred ruling on the motion as to irrelevant, unfairly prejudicial, and confusing testimony (category "k"); and denied the motion as to several categories—(a) corporate conduct, (c) regulatory compliance, (d) alleged violations of FDA rules or regulations in regard to Zometa, and (f) drug labeling—subject to the usual requirements such as relevance and evidentiary support. *Id*. at **3-4. Further, the Court found the motion was moot as to some categories—(g) corporate state of mind, (h) industry standards, (i) monitoring of clinical trials, and (j) ghostwriting—because the plaintiff stipulated that Dr. Parisian would not be asked to testify regarding those categories. *Id*. at *3.

Although the plaintiff in *Dopson-Troutt* stipulated that she would not ask Dr. Parisian to testify about medical causation, the plaintiff sought to have Dr. Parisian testify regarding what Novartis refers to as "regulatory causation" (category "e"). The Court granted Novartis' motion to exclude regulatory causation testimony, finding:

> This line of inquiry involves 21 C.F.R. § 201.57, an FDA regulation having to do with drug labels, and which provides in pertinent part that
>
> > the labeling must be revised to include a warning about a clinically significant hazard as soon as there is reasonable evidence of a causal

> association with a drug; a causal relationship need not have been definitely established.

21 C.F.R. § 201.57(c)(6)(i). [Novartis] argues that allowing Parisian to testify regarding Novartis's compliance with that regulation is effectively the same as allowing her to testify regarding medical causation, allowing her to make an end run around her stipulation. (In other words, Novartis contends that to opine as to whether the label should have been revised, Parisian would need to discuss whether there was a causal association between Zometa and ONJ, which is essentially the same as discussing whether there was a causal relationship between Zometa and ONJ.) Plaintiffs' counsel responds that "causal association" is an FDA term, rather than a medical term, and that Parisian as an FDA compliance expert should be permitted to testify in regard to that term. Aside from its origin, however, Plaintiffs' counsel offers nothing to meaningfully distinguish "causal association" from medical causation, at least in terms of the expertise required to analyze it. On this record, Parisian will not be permitted to offer opinions regarding any alleged "causal association" between ONJ and Zometa.

*Id*.

### 2. *Novartis' Daubert motion in this case*

In this case, Plaintiff's response to Novartis' *Daubert* motion includes an argument as to why Dr. Parisian should be allowed to testify regarding regulatory causation (category "e"). However, Plaintiff contends this argument was included for the purpose of "preserving the issue for future proceedings." (Dkt. 35 at 3.) Moreover, Plaintiff's regulatory causation argument in this case does not differ from the one made by the *Dopson-Troutt* plaintiff. The Court adopts its *Dopson-Troutt* reasoning and precludes Dr. Parisian's opinions regarding regulatory causation.

Other than the Court's ruling on "regulatory causation" (category "e"), the parties appear to agree with the Court's rulings in *Dopson-Troutt*. Accordingly, the Court adopts its *Dopson-Troutt* reasoning and grants in part, denies in part, and defers in part Novartis' motion to exclude Dr. Parisian's testimony as outlined above.

9

## IV. CONCLUSION

Accordingly it is **ORDERED AND ADJUDGED** that:

A. Defendant's *Daubert* Motion to Exclude Certain Testimony of Plaintiff's Expert Dr. Robert Marx (Dkt. 30) is **GRANTED IN PART AND DENIED IN PART**.

B. Defendant's *Daubert* Motion to Exclude Certain Testimony of Plaintiff's Expert Dr. James Vogel (Dkt. 31) is **DENIED IN PART AND DEFERRED IN PART.**

C. Defendant's *Daubert* Motion to Exclude Plaintiff's Expert Dr. Suzanne Parisian (Dkt. 33) is **GRANTED IN PART, DENIED IN PART, AND DEFERRED IN PART**.

**DONE AND ORDERED** at Tampa, Florida, this 22nd day of May, 2014.

SUSAN C. BUCKLEW
United States District Judge

Copies To: Counsel of Record