**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MARGARET KIRCHMAN, et al.,

      Plaintiffs,

       v.                               Case No.: 8:06-cv-1787-T-24-TBM

NOVARTIS PHARMACEUTICALS
CORPORATION,

      Defendant.

_____/

**ORDER**

This cause comes before the Court on Defendant Novartis Pharmaceuticals Corporation's Motion to Apply New Jersey Law to Plaintiffs' Punitive Damages Demand and to Preclude Punitive Damages. (Dkt. 41.)  Plaintiff Margaret Kirchman opposes. (Dkt. 45.)  For the reasons stated below, Novartis' motion is granted.

**I.     BACKGROUND**

In January 2002, Donald Kirchman and Margaret Kirchman were residing in Florida, when Mr. Kirchman was diagnosed with multiple myeloma.  From January 2002 to December 2003, Mr. Kirchman was prescribed and received Aredia and Zometa, which are bisphosphonate drugs manufactured by Novartis and approved by the Food and Drug Administration.  Novartis is a Delaware corporation and has its principal place of business in New Jersey.

In 2004, Mr. Kirchman's oral surgeon extracted several teeth and noted exposed bone in Mr. Kirchman's mouth.  In July 2007, Mr. Kirchman presented to his oral surgeon with a mass in the left lower jaw.  The oral surgeon biopsied the mass, and Mr. Kirchman's oncologist confirmed that the mass was positive for multiple myeloma.  By March 24, 2008, Mr. Kirchman had

developed hypercalcemia of malignancy and agreed to take Aredia.  Three weeks after receiving

one dose of Aredia, Mr. Kirchman died from multiple myeloma.

In 2006, the Kirchmans brought this diversity action against Novartis, alleging that

Novartis' failure to warn about the risks of Aredia and Zometa caused Mr. Kirchman to develop

osteonecrosis of the jaw. (Dkt. 1.)  Count I is a strict liability failure to warn claim, count III is a

negligent failure to warn claim, and count VI is a loss of consortium claim.[1]  The complaint seeks

compensatory damages and punitive damages.

In the instant motion, Novartis's argues that: (1) under Florida's choice-of-law rules,

Florida law governs liability and compensatory damages, but New Jersey law governs the issue of

punitive damages; and (2) New Jersey law precludes punitive damages.  Noting that the parties

briefed, and this Court addressed, these same legal arguments in *Dopson-Troutt v. Novartis*

*Pharmaceuticals Corp.*, 2013 WL 3808205 (M.D. Fla. Jul. 22, 2013), Novartis adopts its

arguments made in *Dopson-Troutt* and asserts that the Court's *Dopson-Troutt* order should be

followed in this case. (Dkt. 41.)  In response, Plaintiff argues that *Dopson-Troutt* was wrong and

that: (1) Florida law should apply to punitive damages; and (2) even if New Jersey law governs,

punitive damages are not precluded. (Dkt. 45.)

## II.    CHOICE OF LAW FOR PUNITIVE DAMAGES

### A.    Standard

A federal court sitting in diversity must apply the conflict rules of the forum state.  *See*

*Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941).  Thus, Florida's choice-of-law rules

apply in this case.  *See Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1118 (11th Cir. 1990).

---

[1] Plaintiff has withdrawn count II (negligent manufacture) and count IV (breach of express warranty), and
the Court granted summary judgment in Novartis' favor as to count V (breach of implied warranty).

Florida applies the "significant relationship" approach set forth in the Restatement (Second) of Conflict of Laws (1971) to determine choice-of-law questions for tort issues.  *See Bishop v. Fla. Specialty Paint, Co.,* 389 So. 2d 999, 1001 (Fla. 1980).  Generally, this approach requires determining which state—with respect to each particular issue—has "the most significant relationship to the occurrence and the parties," by assessing the enumerated contacts in section 145 in light of the general principles stated in section 6.  *Restatement (Second) of Conflict of Laws* § 145(1) (1971); *Mezroub v. Capella*, 702 So. 2d 562, 565 (Fla. 2d DCA 1997) ("Under these guidelines, the choice of applicable law is determined for each particular issue.").

Section 145 provides that the "[c]ontacts to be taken into account in applying the principles of [section] 6 . . . include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  *Restatement (Second) of Conflict of Laws* § 145(2) (1971).  "These contacts are to be evaluated according to their relative importance with respect to the particular issue."  *Id.*

Because the significant relationship test "is not a simple 'center of gravity' or 'contacts counting' test," *Mezroub*, 702 So. 2d at 565, courts must examine the section 145 contacts in light of the general principles stated in section 6, which include:

- (a) the needs of the interstate and international systems,

- (b) the relevant policies of the forum,

- (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

- (d) the protection of justified expectations,

- (e) the basic policies underlying the particular field of law,

- (f) certainty, predictability and uniformity of result, and

- (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2) (1971).[2]

However, for personal injury actions, the place of injury determines which state's laws apply, unless some other state has a more "significant relationship" to the particular issue:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 146 (1971).  Thus, the following framework governs the determination of the applicable law for a particular issue in this case:

> [T]he court must determine which state or states have a true interest in the application of their law, by examining the various factual contacts [set forth in section 145] in light of the rather malleable principles set forth in section 6.  If only one state is interested in the tort issue, the court should apply the law of that state.  If two or more states are interested, then the court must determine which state has a dominant interest and apply the law of that state.  If no state has a clearly dominant interest, then the court should apply the law of the place of injury as explained in section 146.

*Mezroub*, 702 So. 2d at 565.

Because Kirchman's injuries occurred in Florida, we begin our analysis with the assumption that Florida law will apply unless some other state has a more significant relationship "with respect to a particular issue."  The particular issue in this case is punitive damages.

## B.      Dépeçage and Actual Conflict

As a preliminary matter, the fact that Florida law governs liability and compensatory damages in this case does not necessarily mean it also governs punitive damages.  *See Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1571 n.6 (11th Cir. 1990) ("[T]he fact that one state has the

---

[2] The section 6 principles "vary somewhat in importance from field to field," with principles (a), (b), (c), and (B) generally assuming greater importance in tort cases.  Restatement (Second) of Conflict of Laws § 145 cmt. b (1971).

4

greatest interest in applying its punitive damage rule to a particular dispute does not necessarily mean that the same state will have the greatest interest in applying its compensatory damage rule."). Courts "are not bound to decide all issues under the local law of a single state"; rather, "[e]ach issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states." Restatement (Second) of Conflict of Laws § 145 cmt. d (1971); *see also Foster v. United States*, 768 F.2d 1278 (11th Cir. 1985) ("[D]ifferent substantive issues in a single case may have to be resolved under the laws of different states where the choices influencing decisions differ."). Thus, "the question of which state retains the greatest interest in applying its punitive damage rule should be analyzed separately from the question of which state retains the greatest interest in applying its compensatory damage rule." *Judge*, 908 F.2d at 1571 n.6; *see also Guenther v. Novartis Pharms. Corp.*, 2013 WL 1225391, at *2 (M.D. Fla. Mar. 27, 2013); *Zimmerman v. Novartis Pharms. Corp.*, 889 F. Supp. 2d 757, 761-62 (D.Md. 2012) ("The 'significant relationship' approach allows for 'dépeçage,' such that a court can apply different state laws to different issues in a single case—*i.e.*, liability, compensatory damages, and punitive damages.").

As another preliminary matter, a conflict exists between Florida law and New Jersey law regarding punitive damages. Under New Jersey law, drug companies are immune from punitive damages in product liability cases where the drug was approved by the FDA, "or is generally recognized as safe and effective pursuant to conditions established by the [FDA] and applicable regulations, including packaging and labeling regulations." N.J. Stat. Ann. § 2A:58C-5(c). An exception exists if the drug company "knowingly withheld or misrepresented information required to be submitted under the [FDA's] regulations." *Id.* Under Florida law, no such immunity exists. *See* Fla. Stat. § 768.73.

5

### C.    Section 145(2) Contacts

The parties do not dispute that Florida is the place where Mr. Kirchman's injury occurred. Nor do they dispute that Florida is where Plaintiff resides, and New Jersey is Novartis' place of business.

As for the place of conduct that caused Plaintiff's injury, Novartis contends it is New Jersey—where Novartis made its labeling and marketing decisions.  (Dkt. 41 at 3.)  Although Plaintiff's response brief does not identify the place where the conduct causing the injury occurred, Plaintiff presumably asserts that it is Florida, given that plaintiffs in other Aredia and Zometa cases (including *Dopson-Troutt*) have argued that the place of the injury-causing conduct is where the plaintiff was prescribed and infused with the drugs.

Notably, Plaintiff cites two recent Aredia and Zometa cases, which did not apply New Jersey law to punitive damages, and which found that the place where the conduct causing the injury occurred was the state where the plaintiff was prescribed and infused with the drugs.  *See Rowland v. Novartis Pharmaceuticals Corp.*, 2013 WL 6145119 (W.D. Pa. Nov. 22, 2013) ("[T]he conduct causing injury occurs primarily where the injured party was prescribed and ingested the drug."); *Winter v. Novartis Pharmaceuticals Corp.*, 739 F.3d 405, 410 (8th Cir. 2014) (affirming the district court's holding that Missouri has the most significant relationship to the punitive damages claim, finding "Missouri is where Novartis's sales representatives failed to warn Baldwin's doctor, making it also, at least in part, the state of the conduct causing the injury").  In contrast, in Aredia and Zometa cases that have held that New Jersey governs punitive damages, courts determine New Jersey to be the place of conduct causing the injury. *See, e.g., Zimmerman*, 889 F.Supp.2d at 763*; Krause,* 926 F.Supp.2d 1306, 1310 (N.D. Fla. 2013); *Talley v. Novartis Pharms. Corp.*, 2011 WL 2559974, at *4 (W.D.N.C. June 28, 2011).

The Court agrees with the reasoning of the latter courts.  *See Williams v. Novartis Pharms. Corp.,* 2014 WL 1599547, at **5-6 (S.D. Ohio Apr. 21, 2014) ("In the Court's view, . . . the *Rowland* court erred in finding that Pennsylvania[, rather than New Jersey,] was 'the place where the conduct causing injury occurred.'").  As the Court found in *Dopson-Troutt*, New Jersey is the place of injury-causing conduct because it is where Novartis made its corporate decisions regarding the labeling, packaging and warning of the drugs, which Plaintiff alleges caused Mr. Kirchman's osteonecrosis of the jaw.  *Dopson-Troutt*, 2013 WL 3808205, at *4.

### D.      Evaluating the Section 145 Contacts and Section 6 Principles

Novartis argues that New Jersey has a more significant relationship to the punitive damages issue, because the place where the injury-causing conduct occurred is particularly significant when the purpose of the tort rule is to punish and deter.  Plaintiff contends Florida law should apply because Florida is the place of injury.  Plaintiff argues that the Court in *Dopson-Troutt* erred because it: (1) failed to consider Florida cases "stand[ing] for the proposition that the key factor is where the injury occurs"  and (2) "use[d] a line of cases derived from when an injury only 'fortuitously' occurs in Florida."  (Dkt. 45 at 3-5.)

As the Court explained in *Dopson-Troutt*, 2013 WL 3808205, at **3-4, the Court "evaluates the contacts according to their relative importance with the respect to the particular issue."  *Mezroub*, 702 So. 2d at 565-66.  Although the place of injury is generally the most important contact, other contacts may be more important to certain issues.  *See, e.g., Mezroub*, 702 So. 2d at 565-66 (holding that "[f]or a statute of limitations issue, when one state is both the residence and place of relationship for all parties, these contacts are far more important than the place of injury").

7

Specifically, the place where the conduct occurred will assume greater importance than the place of injury in certain situations.  *See Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 485 F.3d 1233, 1241 n.1 (11th Cir. 2007).  While one of these situations is when the place of injury is fortuitous, *id.*, another situation is "when the primary purpose of the tort rule involved is to deter or punish misconduct."  Restatement (Second) of Conflict of Laws § 145(2) cmt. e (1971) (citing § 145(1) cmt. c)); *see also Grupo Televisa*, 485 F.3d at 1241 (citing § 145(2) cmt. e and holding "the district court undervalued the importance of the contacts relating to the place where the [defendant's tortious interference] conduct causing the injury occurred").  Here, the purpose of punitive damages is to deter and punish misconduct.  *See Grupo Televisa*, 485 F.3d at 1242 ("Florida's law of tortious interference is clearly conduct-regulating on some level since the law allows for punitive damages, which are meant to punish wrongdoers.").  The Court therefore agrees with the reasoning of the courts finding that—with respect to punitive damages— the place of the injury-causing conduct, New Jersey, is more important than the place of injury. *See Dopson-Troutt*, 2013 WL 3808205, at *4.

The Court also agrees with the courts that have found that the section 6 principles support applying New Jersey law to punitive damages. *Id.*; *Zimmerman*, 889 F.Supp. 2d at 763-64; *Guenther*, at *2 (adopting the *Zimmerman* reasoning); *Williams*, 2014 WL 1599547, at *6; *but see Rowland*, 2013 WL 6145119 at **8-11.  Accordingly, the Court finds that New Jersey has the most significant relationship, and therefore New Jersey law should be applied, to the issue of punitive damages in this case.

## III.   PRECLUSION OF PUNITIVE DAMAGES

New Jersey Statutes § 2A:58C-5(c) prohibits punitive damages for FDA-approved drugs unless a plaintiff can show that a defendant "knowingly withheld or misrepresented information

required to be submitted under the [FDA's] regulations."  Novartis contends Plaintiff is precluded from seeking punitive damages because that statutory exception requirement is preempted by the federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301.  (Dkt. 41 at 1-3.)  Plaintiff asserts that New Jersey law does not preempt punitive damages. (Dkt. 45 at 4.)

The Court has previously addressed these legal arguments.  *See Dopson-Troutt*, 2013 WL 3808205, at **4-5.  For the reasons previously stated, the Court finds that New Jersey law precludes Plaintiff from seeking punitive damages.  *Id.* (citing *Guenther*, 2013 WL 1225391, at *3, and *Zimmerman*, 889 F.Supp.2d at 776).  Accordingly, Plaintiff's punitive damages claim will be stricken.

## IV.    CONCLUSION

Accordingly, it is ORDERED AND ADJUDGED that Defendant's Motion to Apply New Jersey Law to Plaintiffs' Punitive Damages Demand and to Preclude Punitive Damages (Dkt. 41) is **GRANTED**.

DONE AND ORDERED at Tampa, Florida, this 16th day of June, 2014.

SUSAN C. BUCKLEW
United States District Judge


Copies to: Counsel of record